IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| In re:<br><br>HIGHPOINT LIFEHOPE SPE LLC,<br><br>Debtor. | CHAPTER 11 CASE<br><br>CASE NO. 22-50929-MMP |

**MOTION FOR ORDER GRANTING STAY RELIEF**

This Motion is filed by Capital One, National Association ("Capital One"), as agent and lender under the Loan Agreement (defined below). Through this Motion, Capital One respectfully requests that the Court, pursuant to Bankruptcy Code § 362(d)(1), enter an order granting relief from the automatic stay so that Capital One may enforce its rights and remedies with respect to its Collateral (defined below). (A proposed form of *Order Granting Stay Relief In Favor Of Capital One* is attached to this Motion as **Exhibit A**.) Alternatively, through a separate motion filed in conjunction with this Motion (the "Dismissal Motion"),[1] Capital One requests that the Court, pursuant to Bankruptcy Code § 1112(b), enter an order dismissing the above-captioned Chapter 11 case (the "Bankruptcy Case").

**PRELIMINARY STATEMENT**[2]

1. Highpoint Lifehope SPE LLC (the "Debtor") owns two office buildings located in San Antonio, but leases the underlying real property pursuant to a long-term ground lease. Substantially all of the Debtor's assets are encumbered by liens held by Capital One as security for a Loan with a balance of more than $51 million.[3]

---

[1] L. Rule 4001(1)(E) states that a motion for relief from the automatic stay "shall not be combined with other forms of relief except those allowed by §§ 362 and 1205."

[2] Capitalized terms used in the Preliminary Statement have the meanings defined below in this Motion.

[3] The Debtor has not made any debt service payments on the Loan since January 2022.

1

2. The Debtor commenced this single asset real estate Bankruptcy Case to stay a receivership action that Capital One was pursuing in state court. (The Debtor actually filed its bankruptcy petition *during* the receivership hearing on August 22, 2022.) In the nearly two months since then, the Debtor has taken almost no meaningful action to prosecute this case, the Debtor is failing to preserve and maintain the Project, the Debtor is accruing post-petition operating expenses, the Debtor has failed to respond to requests for basic financial information, and the Debtor is otherwise failing to meet its fiduciary responsibilities as debtor-in-possession.

3. As the Court knows, the only Cash Collateral use that has been authorized in this case (or even sought) was obtained as a result of *Capital One* filing an emergency motion for cash collateral protections. Pursuant to the Cash Collateral Protection Order, the Debtor was authorized to pay the Ground Lease rent payment due on September 1, 2022; Capital One later consented to the Debtor's use of Cash Collateral to pay the October rent payment under the Ground Lease. Other than these payments and perhaps a small payment for HVAC maintenance/repairs, Capital One is not aware that the Debtor has paid any other expenses since the filing of the Bankruptcy Case.

4. Even though the hearing on Capital One's Cash Collateral Protection Motion was more than a month ago, the Debtor still has not presented a reasonably detailed interim cash collateral budget (as requested by Capital One). Instead, based on the testimony of the Debtor's principal (Scott Honan) at the Section 341 meeting of creditors and the limited financial reporting by the Debtor pursuant to the Cash Collateral Protection Order, the Debtor is simply not paying any of its post-petition operating expenses, including employee wages, insurance premiums, or utilities. As a result, the cleaning staff has quit, at least one tenant is using its own cleaning staff from a different property to clean its space (and expects a credit against its rent for this expense), and the amounts owed to the insurance company and utilities go unpaid. The Debtor has not cured, and has no ability to cure, existing defaults on the Ground Lease, including more than $90,000 owed in past due taxes.

5. Further, the Debtor has now disclosed that, shortly before the Bankruptcy Case was filed, the Debtor drained its operating accounts of almost all cash on hand (funds that were urgently

needed to pay critical operating expenses and amounts owing under the Ground Lease). The Debtor used these funds (totaling $415,000) to repay its affiliates and to obtain claim releases benefitting affiliates.

6. In addition to the Debtor's failure to maintain the Project or prosecute the Bankruptcy Case, it is also clear that the Debtor does not have the funding available to pursue any viable plan of reorganization. Such a plan would, at bare minimum, require the payment of all administrative claims, payment of debt service payments on the Capital One Loan, and payment of all amounts due under the Ground Lease, including cure payments. The Debtor has not shown any likelihood that it has a feasible plan in prospect.

7. As a result of the Debtor's inaction and continuing gross mismanagement, the Project is continuing to deteriorate and the unpaid administrative expenses are continuing to accrue. Capital One is confronted with a continuing loss of value and harm to its Collateral. Under these circumstances, there is cause for the Court to grant stay relief to Capital One under Section 362(d)(1) so that Capital One may enforce its rights and remedies against its Collateral.

## BACKGROUND[4]

8. On August 22, 2022, the Debtor filed its voluntary petition [Dkt. 1] (the "Petition") under Chapter 11 of the Bankruptcy Code, thereby initiating the Bankruptcy Case. In its Petition, the Debtor described its business as Single Asset Real Estate, as defined in 11 U.S.C. § 101(51B). See Petition at p. 2.

9. The Debtor owns and operates two office buildings located at 8401 Datapoint Drive and 8415 Datapoint Drive, San Antonio, Texas (collectively, the "Project"). However, the Debtor does not own the real property underlying the Project (the "Real Property"). Rather, the Debtor is the ground lessee of the Real Property pursuant to a long term Ground Lease dated as of April 13,

---

[4] In accordance with L. Rule 4001(a)(1)(D), Capital One submits with this Motion the Declaration of Michael G. Gardullo attached hereto as **Exhibit F**.

2018 (the "Ground Lease") between Woodbranch Highpoint, LLC (as the successor-in-interest to B.H. Highpoint Towers, LLC) (the "Ground Lessor"), as lessor, and the Debtor, as lessee.[5]

10. On or about April 18, 2019, the Debtor, as borrower, and Capital One, as administrative agent, collateral agent, and a lender, entered into a Loan Agreement dated as of April 18, 2019 (as amended, the "Loan Agreement").[6] Capital One is the sole lender under the Loan Agreement.

11. The Loan Agreement provided for Capital One to make a non-revolving Loan to the Debtor in advances in an aggregate principal amount totaling no more than $65,000,000 (the "Loan"). As of the Petition Date, the amount owing from the Debtor to Capital One under the Loan Agreement and the other Loan Documents (as defined below) (the "Indebtedness") is not less than $51,135,446.78 of unpaid principal, plus accrued and accruing interest (including default interest), costs, fees (including attorney's fees) and other amounts chargeable to the Debtor under the Loan Documents.

12. On or about April 18, 2019, to secure the repayment of the Loan and all of the Debtor's other Indebtedness under the Loan Agreement and other Loan Documents, the Debtor executed for the benefit of Capital One a Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of April 18, 2019 (the "Leasehold Deed of Trust"), which was filed in the real property records of Bexar County, Texas on April 22, 2019 at Document No. 20190071427. A related UCC-1 financing statement naming the Debtor as debtor and Capital One as secured party was filed with the Delaware Department of State on April 18, 2019 at UCC Initial Filing No: 2019 2714595 (the "UCC Financing Statement").[7]

---

[5] A copy of the Ground Lease is attached as Exhibit 1 to the *Appendix Of Loan And Security Documents And Related Documents Filed By Capital One, National Association* [Dkt. 22] (the "Appendix") filed by Capital One.

[6] A copy of the Loan Agreement is attached to the Appendix as Exhibit 2.

[7] Copies of the Leasehold Deed of Trust and the UCC Financing Statement are attached to the Appendix as Exhibits 7 and 11, respectively.

QB\191108.00433\76340462.3

13. Pursuant to the Leasehold Deed of Trust, the Debtor granted to Capital One first and prior, valid and perfected liens and security interests in substantially all of its assets, including, among other things, all of the Debtor's right, title, and interest in and to the Real Property (including all of the Debtor's rights under the Ground Lease), all buildings, other improvements and fixtures at the Project, and the Debtor's other assets including equipment, furniture, accounts, general intangibles, personal property, leases and subleases, rents, other revenues of any kind, books and records, deposit accounts, insurance policies and all other assets used in connection with the operation of, or otherwise related to, the Project (collectively, the "Collateral").[8]

14. Capital One's Collateral includes "cash collateral" as defined in Bankruptcy Code §363(a) (collectively, the "Cash Collateral"). The Cash Collateral includes all rents and other revenues from the Project.

15. The Debtor asserts that the value of the Collateral is $59,600,000.00 based upon a 2019 appraisal. See Debtor's Schedule A/B, [Dkt. 44]. Capital One disputes this valuation and asserts that there is not a significant equity cushion in the value of the Collateral over the amount of Capital One's liens to provide any adequate protection for Capital One's interests.

**The Forbearance Agreement**

16. After the Debtor had defaulted repeatedly under the Loan Agreement as more particularly described below, the Debtor requested that Capital One provide certain accommodations to provide the Debtor time to attempt to sell the Project or refinance the Loan. On or about May 5, 2022, Capital One and the Debtor entered into an Amendment and Forbearance Agreement (the "Forbearance Agreement"), whereby Capital One agreed to forbear during a forbearance period from exercising any default-related rights and remedies against the Debtor solely with respect to certain "Specified Defaults" (as defined in the Forbearance Agreement).[9]

---

[8] The Loan Agreement, the Leasehold Deed of Trust, the UCC Financing Statement filed by Capital One, and all other loan and security documents executed in connection therewith are referred to herein collectively as the "Loan Documents."

[9] A copy of the Forbearance Agreement is attached to the Appendix as Exhibit 15.

QB\191108.00433\76340462.3

Among other things, the Debtor's continuing events of default described as Specified Defaults in the Forbearance Agreement include (a) its failure to pay monthly debt service payments on the Loan for the months of February, March and April, 2022, (b) its failure to pay property taxes owing with respect to the Real Property and Project when due, and (c) its continuing failure to provide financial reporting and information. None of these Specified Defaults have since been cured.

### Agreement Regarding Forbearance Defaults

17. After the May 1, 2022 effective date of the Forbearance Agreement, the Debtor repeatedly failed to comply with the terms and conditions of the Forbearance Agreement, including by (a) failing to provide required financial reporting, documents, and other information; (b) failing to provide evidence of release of certain mechanic's liens; and (c) failing to pay a required legal fee reimbursement. On or about June 27, 2022, Capital One and the Debtor entered into an Agreement Regarding Forbearance Defaults and Related Matters (the "Agreement re Forbearance Defaults") to address issues related to the Debtor's defaults under the Forbearance Agreement and related matters. As part of the Agreement re Forbearance Defaults, the Debtor agreed to proceed with a consensual "Sale Process" for marketing and selling the Project and related Collateral overseen by a sale monitor retained by the Debtor.[10]

### Subsequent Defaults and Forbearance Defaults

18. After the parties executed the Agreement re Forbearance Defaults, the Debtor further breached its agreements in the Forbearance Agreement and the Agreement re Forbearance Defaults. A number of additional Forbearance Defaults and Events of Default have occurred and are continuing, including, among others: (a) in violation of the Forbearance Agreement, the Debtor failed to pay to Capital One an interest only payment in the amount of $196,520.63 which was due on August 1, 2022; (b) in violation of the Agreement re Forbearance Defaults, the Debtor failed to complete the clean-up and remedial measures at the Project requested by the sale monitor; and (c) the Debtor failed to pay certain 2021 past due real estate taxes for the Real Property, which

---

[10] A copy of the Agreement re Forbearance Defaults is attached to the Appendix as Exhibit 16.

total at least $112,520.89 (the Debtor's failure to pay these real estate taxes when due also constitutes a default under the Ground Lease).

19. On August 9, 2022, as a result of the numerous Events of Default and Forbearance Defaults identified above, Capital One accelerated the Loan balance and all Indebtedness due under the Loan Documents became immediately due and payable in full in accordance with the terms of the Loan Documents.

### The Receivership Action

20. On August 15, 2022, Capital One filed a petition commencing an action (the "Receivership Action") seeking the appointment of a receiver for the Project and other Collateral in the Bexar County District Court, Case No. 2022-CI-15585.

21. During the initial hearing in the Receivership Action on August 22, 2022, the Debtor announced that it had filed bankruptcy. The state court terminated the hearing at that point.

### The Bankruptcy Case

22. This Bankruptcy Case has been pending for nearly two months, with no discernable progress and minimal action by the Debtor. The Debtor filed a bare-bones petition on August 22, 2022, but did not file a single "first-day" motion in support of its business. (Later, the Debtor filed only a request to delay the deadline for filing its bankruptcy statement and schedules, and an application for authorization to employ counsel.)

*No Request for Use of Cash Collateral*

23. The Debtor did not seek authority to use cash collateral, and did not respond to Capital One's request for basic and customary financial information.

24. Faced with the Debtor's inaction and failure to provide critical information relating to cash collateral issues, Capital One filed *Capital One's Motion for Order: (I) Requiring the Debtor to Identify, Segregate and Sequester Cash Collateral; and (II) Conditioning the Debtor's Use of Cash Collateral to Provide Adequate Protection for Capital One's Interests* [Dkt. 20] (the "Cash Collateral Protection Motion").

7

25. A hearing on the Cash Collateral Protection Motion was held on September 13, 2022, and an Order approving the Cash Collateral Protection Motion [Dkt. 22] (the "Cash Collateral Protection Order") was entered on September 15, 2022.

26. Pursuant to the Cash Collateral Protection Order, the Debtor was, among other things, (i) authorized to pay the September 1, 2022 Ground Lease rent payment; (ii) directed to designate a debtor in possession deposit account (the "Cash Collateral Account") and segregate and sequester all Cash Collateral in the Cash Collateral Account; (iii) prohibited from using Cash Collateral except as provided in the Cash Collateral Order; and (iv) required to provide certain financing reports, information, and an accounting of the $415,000 in funds transferred by the Debtor shortly before the Bankruptcy Case was commenced.

27. Following the hearing, on September 14, 2022, Capital One asked the Debtor to provide a proposed Cash Collateral budget for an interim 30-day period that included an accurate cash balance (rather than the overstated amounts contained in a preliminary budget provided by the Debtor on September 13, 2022) and actual expenses that the Debtor proposed to pay during the 30-day period. The Debtor has not provided a revised proposed budget or otherwise responded to these issues.

28. Even using the inflated revenue shown in the preliminary budget provided by the Debtor, the Project does not generate sufficient income to allow the Debtor to cure the defaults under the Ground Lease or to pay any adequate protection to Capital One, let alone debt service payments that would be required under any possible plan.[11]

29. The Debtor is two months into this case, and more than a month has passed since the cash collateral hearing, and the Debtor still has not filed a request for use of cash collateral. Instead (as reflected in the weekly cash collateral reports that the Debtor has provided as required

---

[11] At the current non-default interest rate under the Loan Agreement, interest accrual on the Loan alone totals more than $240,000 per month.

in the Cash Collateral Protection Order), the Debtor is not paying any operating expenses of the Project.[12]

*The Debtor Is Not Paying Any Operating/Property Expenses*

30. A cash flow statement provided by the Debtor for the months of June, July and August, 2022 (the "Cash Flow Statement/Pre-Petition") shows that the Debtor has not made any payments for electricity since June 2022 and has not made any payments for water or sewer since July 2022.[13] The Debtor has not paid any post-petition utility payments either, nor sought authority to use cash collateral to pay any of these amounts. A copy of the cash flow statement provided by the Debtor for the month of September, 2022 is attached to this Motion as **Exhibit D**.

31. The 341 Meeting was held on September 30, 2022 and October 7, 2022. The Debtor's principal Scott Honan testified as the Debtor's representative.

32. At the 341 Meeting, Mr. Honan testified that representatives of the Debtor were having discussions with the utility companies, but no agreements with respect to adequate assurance or payment of past due amounts had been reached.

33. Critically, the Debtor has not paid any monthly insurance payments since the Petition Date, and Mr. Honan testified that approximately $150,000 is owed in past-due insurance premiums. This failure exposes the estate to the potential risk of catastrophic loss that is not covered by insurance proceeds, and the failure to maintain insurance violates the U.S. Trustee's guidelines.[14] The Debtor does not have a plan to resume making payments or to cure the past due amounts, but instead intends to eventually repay the insurance company through a DIP loan, or refinancing, or otherwise in connection with a plan of reorganization.

---

[12] Copies of the Debtor's weekly cash collateral reports for the weeks ending September 16, 2022, September 23, 2022, September 30, 2022, October 7, 2022, and October 14, 2022 are attached to this Motion as **Exhibit B**.

[13] A copy of the Debtor's Cash Flow Statement/Pre-Petition is attached to this Motion as **Exhibit C**.

[14] See U.S. Trustee's Guidelines § 4.4.7.

34. Mr. Honan testified that the Debtor owes more than $90,000 in past due property taxes, and that the bill for the 2022 taxes of more than $800,000 will be received shortly. The Debtor does not have any ability to pay these taxes but envisions that these amounts will be paid in the future, through a refinance or other loan. The Debtor also owes FNA VI, LLC ("FNA VI") more than $1.7 million in connection with a loan for payment of property taxes for the past two years (which the Debtor secretly obtained in violation of the Loan Agreement).

35. The Ground Lessor has demanded that the Debtor pay unpaid real property taxes totaling more than $112,000. The Debtor's failure to pay such taxes constitutes a default under the Ground Lease, but the Debtor has failed to address this demand.

36. Mr. Honan testified that the Debtor is not paying any employees, its property manager, or its property management company. As a result, the cleaning crew has quit, and the common areas (including bathrooms) are not being cleaned. At least one tenant is using its own cleaning crew to clean its leased space, and is requesting a credit on rent as a result of this expense.

37. The Debtor's inability to pay the necessary operating expenses of the Project is not new. At the 341 Meeting, Mr. Honan testified that for the past several years, the Debtor's income has been insufficient to pay operating expenses. As a result, every month, the Debtor's expenses allegedly have been paid through (a) funds provided by affiliates and/or the Debtor's principal, documented only by entries on the "general ledger" (which, despite multiple requests, the Debtor has failed to provide); (b) loans to pay property taxes, which loans have a current balance of more than $1.7 million and assert priority over Capital One's liens; and (c) an alleged loan from "NewCo" to pay operating expenses, including ground lease payments, janitorial expenses, trash, and various liens, as further discussed below.

*The Debtor Has Diverted Funds To Pay, Or Use For The Benefit Of, Affiliates*

38. The Debtor's Cash Flow Statement/Pre-Petition shows that funds totaling $415,000 were diverted from the Debtor's operating account to the Debtor's attorneys, and then to affiliates, shortly before the Petition Date. These transfers were made at a time when the Debtor was not paying utilities, taxes, or insurance, and ultimately were paid to insiders or affiliates of the Debtor

for unexplained corporate administrative expenses (shown in a single line item as "Corporate Late Fees").

39. At the 341 Meeting, Mr. Honan testified that $215,000 of the diverted funds was used to repay affiliates. Mr. Honan explained that it was difficult to explain when and why these payments were made given the history of intercompany payments that were memorialized through entries in the general ledger, but testified that he believed that these amounts were paid to the affiliates as a result of the affiliates' payments relating to Sportsturf (Astroturf) purchased for a prospective tenant. Currently the Sportsturf is identified as inventory of the Debtor, that allegedly is being stored in a storage unit that the Debtor no longer has. See Dkt. 44, Schedule A/B at #22; Schedule of Financial Affairs at # 20.

40. Approximately $200,000 of the diverted funds was allegedly used to pay a settlement payment to "NewCo." According to Mr. Honan, the Debtor borrowed money from NewCo as a short-term loan to pay operating expenses of the Debtor. NewCo subsequently sued the Debtor and a number of the Debtor's affiliates, including a "cash-flowing" affiliate. Mr. Honan testified that the Debtor paid the full amount of the settlement payment and in exchange the Debtor and the Debtor's affiliates received releases.[15]

*Leasing and Rental Issues*

41. At the 341 Meeting, Mr. Honan testified that a number of leases with prospective tenants and potential lease renewals with existing tenants have "timed out." Significant tenant improvements are needed to secure these leases, and the Debtor does not have the funds to perform these improvements. The Debtor is in discussions with these tenants, but does not expect to finalize these leases absent a refinance with funding for tenant improvements.

42. Many of the existing tenants, particularly the medical tenants, have been unable to pay rent. Mr. Honan testified that the Debtor has agreed to rent abatements with SA Spine, LLC

---

[15] Pursuant to Paragraph 6(c) of the Cash Collateral Protection Order, the Debtor provided an accounting regarding the $415,000 of diverted funds. A copy of the accounting provided by the Debtor is attached to this Motion as **Exhibit E**.

("SA Spine") and Ikare Medical Management ("Ikare"). According to Mr. Honan, the Debtor has a written abatement agreement with SA Spine, but no written agreement with Ikare.

43. Mr. Honan testified that the leases for these tenants will need to be renegotiated, and significant buildouts for surgical centers completed. He alleges that more than $1.6 million of rent owed by Ikare should be classified as uncollectable, and testified that the soonest he expects either tenant to resume paying any portion of rents was in 120 days.

*The Debtor's Failure to Provide Financial Information*

44. The Debtor has continually failed to provide basic financial information requested by Capital One. For more than a month, Capital One has requested clarifying information and corrections to be made with respect to the preliminary budget so that an agreement can be discussed regarding use of Cash Collateral to pay critical expenses, but the Debtor has failed to respond in any meaningful way.

45. At the 341 Meeting, counsel for Capital One requested that the Debtor provide (a) copies of the general ledger accountings detailing the transfers to affiliates; (b) a copy of the rent abatement agreement(s) with tenants; and (c) copies of the loan agreement, Complaint, and settlement agreement relating to the NewCo payment. The Debtor agreed to provide these documents, but more than two weeks have passed and the documents have not been provided.

*The Debtor Does Not Have A Plan In Prospect*

46. At the 341 Meeting, Mr. Honan testified that he intends to fund the operating expenses of the Project during the pendency of the Bankruptcy Case through a DIP loan. Mr. Honan does not have a term sheet or commitment letter with respect to a DIP loan, and has not sought approval of any DIP loan.

47. With respect to a plan of reorganization, Mr. Honan testified that the Debtor's plan is to refinance the Project as a whole, *or* separately refinance each building, *or* obtain a capital infusion, *or* sell the "non-medical" building and refinance the "medical" building.

48. According to Mr. Honan, a refinance would be in the amount of $55-60 million, and the loan proceeds would be used to pay the Indebtedness owing to Capital One, the 2022 taxes

of more than $800,000, the accrued and accruing unpaid insurance premiums of more than $150,000, accrued and accruing past due utilities, past due property taxes of more than $90,000, and to fund an initial $5 million in tenant improvements needed to obtain leases with prospective and existing tenants. Mr. Honan anticipates that this refinance would be a 12-month loan, followed by an additional refinance to bring in additional funds for necessary tenant improvements.

49. The Debtor does not have a term sheet or letter of commitment for any refinance. Instead, the Debtor allegedly has had some discussions and has exchanged a few emails with a loan broker.

## ARGUMENT

50. Under the circumstances discussed above, cause exists for the Court to grant stay relief in favor of Capital One pursuant to Bankruptcy Code § 362(d)(1).[16] Section 362(d)(1) provides that, upon a request by a party in interest, the Court shall grant relief from the automatic stay of Section 362(a) "for cause, including the lack of adequate protection of an interest in property" of the moving party. The statute contains a non-exhaustive list of grounds for stay relief. 11 U.S.C. § 362(d); see also In re 1701 Commerce LLC, 477 B.R. 652, 657-58 (Bankr. N.D. Tex. 2012) (noting that the Bankruptcy Code's definition of cause is not exhaustive for purposes of stay relief or dismissal and citing cases); In re AMC Realty Corp., 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001) ("Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors. . . .")

60. Cause for stay relief exists because the Debtor is failing to provide adequate protection of Capital One's interests in its Collateral, the Debtor is entirely failing to manage its ongoing business operations, the Debtor is not prosecuting the Bankruptcy Case, and the Debtor has no possible reorganization in prospect. The facts of this case as discussed above establish that cause exists for stay relief:

---

[16] Capital One fully reserves its right to seek stay relief on other grounds, including under the grounds for stay relief stated in Section 362(d)(2) and/or Section 362(d)(3), through separate motion.

- Two months into this case, it is clear that the Debtor simply parked itself in bankruptcy to avoid the appointment of a receiver. The Debtor is not prosecuting the case or meeting its fiduciary obligations as debtor in possession. Since the Petition Date, the Debtor has not taken any action to preserve, protect, or maintain the Project.

- The Debtor has not sought authority to use Cash Collateral, and the only use that has been authorized was a result of Capital One filing the Cash Collateral Protection Motion. The Debtor has refused to provide an accurate budget or basic information required to obtain authority or consent to use Cash Collateral.

- The Debtor has not paid the post-petition wages of any of its few employees. As a result, the Debtor's cleaning crew has quit, the common areas and bathrooms are not being maintained, and at least one tenant has engaged its own cleaning crew to clean its space, while requesting a credit on the amount of its rent in exchange. The Debtor's property manager is continuing to work, unpaid, but it is unclear how long she will be willing to do so. The Debtor is not paying its property management company, and has not paid this company in "years."

- The Debtor also is not paying any of the utility bills for the Project, and has not provided adequate assurance of future payment to any of the utility companies.

- The Debtor is not paying insurance premiums and owes approximately $150,000 in past due insurance amounts. The Debtor has no concrete plan or agreement to resume making payments and cure payments for past due amounts. Instead, the Debtor has vague hopes of repaying these past due premium payments as part of a refinance of the Project. The inability to establish continuing insurance coverage protecting the full value of estate assets subject to loss is a critical issue.

- The Debtor owes substantial amounts of past due taxes, and the 2022 tax bill (of more than $800,000) will be issued soon, but the Debtor has not escrowed any funds to pay the taxes and, again, hopes to pay these amounts as part of a refinance of the Project.

- The Debtor's entire interest in the Project is also at risk because the Debtor is in default under the Ground Lease, and has no ability to cure existing defaults.

- Certain of the existing tenants are not paying any rent. The Debtor does not expect to receive any portion of rent from SA Spine and Ikare for at least four months. With respect to these two tenants, Mr. Honan that he had rent abatement agreements with them, and that he would need to renegotiate their leases, as well as perform substantial tenant improvement work as part of the renegotiated leases. The potential renegotiated leases would also entail the forgiveness of approximately $2 million in unpaid rent. Two

- additional tenants' leases are dependent on SA Spine and Ikare remaining in the Project.

- The facts demonstrating the Debtor's gross mismanagement of the estate also establish a continuing loss to the estate. Continuing loss or diminution in value is shown by virtue of depreciation and deterioration of the Project, increasing liabilities or continuing accrual of administrative expenses, and the expected loss of tenants (due to, among other things, the Debtor's inability to fund tenant improvements and failure to appropriate maintain the Project).[17]

- The Debtor does not have any realistic plan for rehabilitation. The Debtor has nothing more than visionary plans for a potential reorganization involving vague thoughts of a potential DIP loan and a refinance of the Capital One loan. None of this is in reasonable prospect.

Clearly, cause exists for the Court to grant stay relief in favor of Capital One under Section 362(d)(1).

## CONCLUSION

WHEREFORE, based upon the foregoing and the record before the Court, Capital One respectfully requests that the Court enter an order granting relief from the automatic stay so that Capital One may enforce its rights and remedies with respect to its Collateral, and granting such other and further relief as is just and warranted under the circumstances of this case.

---

[17] See In re Irasel Sand, LLC 569 B.R. 433, 441 (Bankr. S.D. Tex. 2017) (the term "continuing loss" "requires courts to look beyond the debtor's financial statement and make a full evaluation of the present condition of the estate.") (quoting In re Moore Constr., Inc., 206 B.R. 436, 437-38 (Bankr. N.D. Tex. 1997)); In re Zamora-Quezada, 622 B.R. 865, 881 (Bankr. S.D. Tex. 2017) (same and stating that the loss can either be sufficiently large that it materially impacts the estate and interests of creditors or "can be an ongoing issue, such as negative cash flow, but need not be both."); In re Briggs-Cockerham L.L.C., No. 10-34222, 2010 WL 4866874 *5(Bankr. N.D. Tex. Nov. 23, 2010) unreported (stating that courts look beyond a debtor's financial statements and make a complete evaluation of the debtor's present condition to determine whether there is a continuing loss). As explained by the Fifth Circuit Court of Appeals, an estate should not be held hostage to progressive diminution due to a debtor's "terminal euphoria" where there is not a viable business to protect. See Little Creek Dev. Co. v. Commonwealth Mortgage Corp., 779 F.2d 1068, 1073 (5th Cir. 1986).

Respectfully submitted this 21st day of October, 2022.

        QUARLES & BRADY LLP

By    */s/ Robert P. Harris*
       John A. Harris (admitted pro hac vice)
       Arizona Bar No. 014459
       john.harris@quarles.com
       Robert P. Harris (admitted pro hac vice)
       Arizona Bar No. 011523
       robert.harris@quarles.com
       One Renaissance Square
       Two North Central Avenue
       Phoenix, Arizona 85004-2391
       Telephone: (602) 229-5200

       -and-

MUNSCH HARDT KOPF & HARR, P.C.
       Jay H. Ong
       Texas Bar No. 24028756
       John D. Cornwell
       Texas Bar No. 24050450
       Jamil N. Alibhai
       Texas Bar No. 00793248
       1717 West 6th Street, Suite 250
       Austin, Texas 78703
       Telephone: 512.391.6100
       Facsimile: 512.391.6149
       Email: jong@munsch.com
       Email: jcornwell@munsch.com
       Email: jalibhai@munsch.com

ATTORNEYS FOR CAPITAL ONE, NATIONAL ASSOCIATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that s/he personally caused to be served a true copy of the forgoing on October 21, 2022 on all parties receiving service through the Court's CM/ECF system in the above captioned case, by filing the same through the CM/ECF system, and/or via first class, U.S. Mail, as follows:

### CM/ECF

| | |
|---|---|
| Highpoint Lifehope SPE, LLC<br>*Debtor*<br>nwilson@langleybanack.com<br>cjohnston@langleybanack.com | United States Trustee – SA12<br>erin.coughln@usdoj.gov<br>Roxana.peterson@usdoj.gov<br>Carey.a.tompkins@usdoj.gov<br>ann.killian@usdoj.gov<br>USTPRegion07.SN.ECF@usdoj.gov |
| Woodbranch Highpoint, LLC<br>jcarruth@wkpz.com<br>jcarruth@aol.com<br>ATTY_CARRUTH@trusteesolutions.com | FNA VI, LLC<br>tara.leday@chamberlainlaw.com<br>lisa.adair@chamberlainlaw.com<br>vcovington@mvbalaw.com<br>bankruptcy@mvbalaw.com<br>pbowers@mvbalaw.com |
| Bexar County<br>don.stecker@lgbs.com | Lydia Security Monitoring, Inc.<br>James@rosenbattlawfirm.com |
| Office Ally, Inc.<br>greg.taube@nelsonmullins.com | |

### VIA FIRST CLASS, U.S. MAIL

| | |
|---|---|
| Highpoint Lifehope SPE, LLC<br>11680 Great Oaks Way, Suite 120<br>Alpharetta, GA 30022<br>Attn: Scott C. Honan, Manager<br>*Debtor* | Tara LeDay<br>CHAMBERLAIN HRDLICKA<br>1200 Smith Street, Suite 1400<br>Houston, TX 77002<br>*Counsel for FNA VI, LLC* |

QB\191108.00433\76340462.3

Don Stecker
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
112 E. Pecan Street, Suite 2200
San Antonio, TX 78205
*Counsel for Bexar County*

Lydia Security Monitoring, Inc.
8415 Datapoint Drive, Suite 500
San Antonio, TX 78229-3275

Woodbranch Highpoint, LLC
4265 San Felipe Street, Suite 550
Houston, TX 77027-3019

Office Ally
c/o Gregory M. Taube
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363-1099

**Twenty Largest Unsecured Creditors:**

Small Business Financial Solutions
Rapid Finance
4500 East West Highway, 6th Floor
Bethesda, MD 20814

Lipscomb & Pitts Insurance
2670 Union Ave Extended, Suite 100
Memphis, TN 38112

Newco Capital Group VI LLC
1 Whitehall St., Suite 200
New York, NY 10004

San Antonio Water System
PO Box 2990
San Antonio, TX 78299-2990

Orion Client Services, LLC
17721 Rogers Ranch Parkway
Suite 100
San Antonio, TX 78258

Family Endeavors, Inc.
Attn: Accounting
6363 DeZavla Road
San Antonio, TX 78249

Simplex Grinnell
Johnson Controls Fire Protection
Dept CH 10320
Palatine, IL 60055

Flow Therapy
Med-Tech Construction
2500 West Freeway Suite 200
Fort Worth, TX 76102

Bexar County Tax Assessor
P.O. Box 8399950
San Antonio, TX 78283-3950

Transwestern Commercial Services
Attn: Commission Accounting
2300 North Field St., Suite 2000
Dallas, TX 75201

South Texas Radiology
PO Box 29441
San Antonio, TX 78229

Homann Development Services
10722 Sentinel St.
San Antonio, TX 78217

MLC Landscaping Co. Inc.
14618 Jones Maltsberger Road
San Antonio, TX 78247

Lawton Commercial Services LP
PO Box 1179
McKinney, TX 75070

QB\191108.00433\76340462.3

| | |
|---|---|
| Marvin F. Poer & Co.<br>PO Box 674300<br>Dallas, TX 75267-4300 | AmeriTex Elevator Texas, LLC<br>12050 Crownpoint Drive<br>San Antonio, TX 78233 |
| University Health Systems<br>4502 Medical Drive MS #107-1<br>San Antonio, TX 78229 | A.J. Monier Service Co.<br>1446 N. Flores St.<br>San Antonio, TX78212 |
| Matera Paper Company Inc.<br>835 North WW White Road<br>San Antonio, TX 78219 | Century Electric<br>5712 Mobud St.<br>San Antonio, TX 78238 |

                                                */s/ Lisa Cummings*

QB\191108.00433\76340462.3