UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 22-50929-mmp |
| | ) | CHAPTER  11 |
| | ) | |
| HIGHPOINT LIFEHOPE SPE, LLC, | ) | San Antonio, Texas |
| | ) | |
| | ) | Tuesday, April 4, 2023 |
| Debtor. | ) | 9:03 a.m. to 9:06 a.m. |
| | ) | 9:14 a.m. to 10:06 a.m. |


MOTIONS HEARING

BEFORE THE HONORABLE MICHAEL M. PARKER,
UNITED STATES BANKRUPTCY JUDGE



<u>CALENDARED MOTIONS</u>:      SEE PAGE 2


<u>APPEARANCES:</u>      SEE PAGES 2, 3


Court Reporter [ECRO]:   Recorded; Digital


Transcribed by:      Exceptional Reporting Services, Inc.
P.O. Box 8365
Corpus Christi, TX 78468
361 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

CALENDARED MOTIONS:

1:      MOTION TO ASSUME AND ASSIGN UNEXPIRED GROUND LEASE
        DATED AS OF APRIL 13, 2018 [DKT.NO.130];

2:      OMNIBUS MOTION TO ASSUME UNEXPIRED LEASES
        UNDER WHICH DEBTOR IS LANDLORD [DKT.NO.131];

3:      MOTION FOR RELIEF FROM STAY TO TERMINATE LEASE
        BETWEEN DEBTOR AND OFFICE ALLY, INC [DKT.NO.183];

4:      EXTENDED ORDER AUTHORIZING DEBTOR'S FURTHER LIMITED USE
        OF CASH COLLATERAL AND REGARDING RELATED MATTERS
        [DKT.NO.160];

5:      JOINT MOTION FOR ORDER:
        (I)    AUTHORIZING SALE OF ASSETS;
        (II)   AUTHORIZING SALE PROCEDURES;
        (III)  AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
               EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
        (IV)   SCHEDULING HEARING ON SALE MOTION AND APPROVING
               NOTICE THEREOF; AND
        (V)    GRANTING RELATED RELIEF AND MOTION TO ASSUME
               EXECUTORY CONTRACT [DKT.NO.187];

6:      MOTION FOR EXPEDITED CONSIDERATION [DKT.NO.242];

7:      MOTION TO SUBMIT BID EXHIBIT UNDER SEAL [DKT.NO.255]


APPEARANCES:

For Debtor:              NATALIE F. WILSON, ESQ.
                         Langley & Banack
                         Trinity Plaza II
                         Suite 700
                         745 East Mulberry
                         San Antonio, TX 78212


Also present:            SCOTT HONAN

For Woodbranch           JEFF CARRUTH, ESQ.
Highpoint:               Weycer Kaplan Pulaski & Zuber
                         24 Greenway Plaza
                         Suite 2050
                         Houston, TX 77046


Also present:            MIKE MEAGHER

**APPEARANCES:**            (CONTINUED)

For U.S. Trustee:          ERIN COUGHLIN, ESQ.
                           U.S. Trustee's Office
                           615 E. Houston St.
                           Suite 533
                           San Antonio, TX 78205


For San Antonio            CAROLINE N. SMALL, ESQ.
Preventative               LANDON M. HANKINS, ESQ.
& Diagnostic Medicine:     Davis & Santos
                           719 S. Flores Street
                           San Antonio, TX 78204


Also present:              DR. ALBERT MOSQUEDA

For Office Ally:           GREGORY M.  TAUBE, ESQ.
                           Nelson Mullins Riley & Scarborough
                           201 17th Street NW
                           Suite 1700
                           Atlanta, GA 30363


For Capitol One:           JOHN A. HARRIS, ESQ.
                           ROBERT P. HARRIS, ESQ.
                           Quarles & Brady
                           One Renaissance Square
                           Two North Central Avenue
                           Phoenix, AZ 85004

                           JAY ONG, ESQ.
                           Munsch Hardt Kopf & Harr
                           1717 West 6th Street
                           Suite 250
                           Austin, TX 78703

1          **San Antonio, Texas; Tuesday, April 4, 2023; 9:03 a.m.**

2              **(Attorney Taube appearing through Webex)**

3                      **(Call to Order)**

4          **THE CLERK:**  Case 22-50929; Highpoint Lifehope SPE,

5    LLC.

6          **MS. WILSON:**  Good morning, Your Honor.  Natalie

7    Wilson on behalf of the Debtor.  And joining us on Webex should

8    be the Debtor's principal, Mr. Scott Honan.

9          He might not dial in until the 10:00 o'clock hearing

10   on the Motion to Dismiss.

11         **THE COURT:**  All right.  Thank you, Ms. Wilson.

12         **MR. CARRUTH:**  Good morning, Your Honor.  Jeff Carruth

13   on behalf of Woodbranch Highpoint, LLC.  Also in the courtroom

14   is Mike Meagher; M-e-a-g-h-e-r, with Woodcrest.

15         **THE COURT:**  (Indiscern.).

16         **MS. COUGHLIN:**  Good morning, Your Honor.  Erin

17   Coughlin on behalf of the United States Trustee.

18         **THE COURT:**  Good morning, Ms. Coughlin.

19         **MS. SMALL:**  Good morning, Your Honor.  Caroline

20   Small, from Davis & Santos, on behalf of Creditor San Antonio

21   Preventive & Diagnostic Medicine.

22         Also on the phone is our client representative, Dr.

23   Albert Mosqueda, on the Webex.  And with me, also from my

24   office, is Attorney Landon Hankins.

25         **THE COURT:**  I'm sorry.  The last one?

1       **MS. SMALL:**  With me, also from my office, is Attorney

2    Landon Hankins.

3          **THE COURT:**  Okay.  Good morning, Ms. Small.

4          **MR. HARRIS:**  Good morning, Your Honor.  John Harris

5    and Bob Harris, along with our co-Counsel, Jay Ong, on behalf

6    of secured creditor, Capital One.

7          **THE COURT:**  Okay.  Ms. Wilson, this is (indiscern.).

8    I was looking at it.  And we have them split between 9:00

9    o'clock and 10:00 o'clock hearing.

10          (Indiscern.).

11       **(Working on Audio problems)**

12          **THE COURT:**  Let me do this.  And I apologize to

13    Counsel.  We're going to take a five-minute recess.

14          You folks can see what's going on with the mic.

15          My apologies.  Thank you.

16          **THE CLERK:**  All rise.

17       **(Court is in Recess)**

18          **THE COURT:**  Sorry about that.  We normally check the

19    mics in the morning.  And something happened.  Maybe I turned

20    something off here.

21          But, Ms. Wilson, please.

22          **MS. WILSON:**  Good morning again, Your Honor.  Do we

23    need to do appearances again?

24          **THE COURT:**  No.

25          **MS. WILSON:**  We've done all that?  Okay.

1          **THE COURT:**  No.  You're on the record.  It's just I

2   wasn't getting on the record.

3          **MS. WILSON:**  So this morning we have a number of

4   matters set.  Most of them are for status conference or have no

5   real objection.

6          There were three motions related to leases.  The

7   first was the Debtor's Omnibus Motion to Assume Tenant Leases.

8   The second was the Debtor's Motion to Assume --

9          **THE COURT:**  The ground lease.

10          **MS. WILSON:**  -- the Ground Lease.

11          And then one of the objecting tenants had also filed

12   a Motion for Relief from Stay, which was related to their

13   objection to the Omnibus Motion.

14          All of this we have filed unopposed motions for

15   continuance on.  And I think that all that we require with

16   regard to those motions is a continued hearing date.  Which I

17   think rolls into our status conference on the sale hearing.

18   Because that motion hearing date should follow the sale

19   procedures.

20          The reason we were asking for the continuance is

21   because, unfortunately, the Debtor did not receive any

22   qualified bids in -- under the sale procedures previously

23   approved by the Court.  And so it didn't make sense to go

24   forward on the Motions to Assume to the extent that they also

25   require proof of assignment.

1          And the two tenants who have appeared on that matter

2     -- yeah.  We're in agreement that that was the most efficient

3     and Mr. Taube --

4          **THE COURT:**  I'm sorry.  Please try and proceed.

5          **MS. WILSON:**  Mr. Taube, who had filed the Motion for

6     Relief from Stay, for Office Ally, was in agreement that his

7     Motion for Relief from Stay should also follow those sale

8     hearings.  Because it's going to be kind of all the same

9     evidence; all the same argument.

10          And so, for efficiency's sake, we would ask the Court

11     once -- hopefully, the amended sale procedures are approved, we

12     can set a date for that hearing.

13          If we don't set the date today, I'm sure that

14     Ms. Small, Mr. Taube, and I can come up with a date within

15     those procedures that makes sense in consultation with the

16     Court and the Court's availability.

17          So that's where are on what I loosely term "the lease

18     motions."

19          We have a -- for the continued hearing on cash

20     collateral, we do have a 120-day cash collateral budget to

21     present.  I don't believe there have been any objections to it.

22     It is essentially the same as what we have been using for the

23     last couple of months.

24          Pays the ground lease; pays MCA, as property manager

25     and as the sale broker; pays utilities; pays the employees who

1    are -- who are at the -- the premises; and things -- you know,

2    regular maintenance things, like the trash and HVAC maintenance

3    safety system.

4            So it's essentially the same budget, just carried out

5    through what we project under the amended sale procedures with

6    the end of a sale process.

7            And so I don't think there are any serious objection

8    -- there are any objections there.

9            Our final status conference matter is the sale

10   procedures.  And the Debtor and Capital One have proposed and

11   provided a redline of the sale procedures.  The original order

12   permits the Court to amend the sale procedures on the motion of

13   interested parties.

14           And so based on what happened with our previous sale

15   order and -- we think that the -- there is still interest in

16   the property.  It is not at the $30 million level, where the

17   reserve was set.

18           And so what the Debtor in Capital One and MCA would

19   like to do is to expose the property longer without that

20   restriction of a minimum bid.

21           And there is a provision for -- we're calling it an

22   "early-bird sale" in the next 30 days.  If not, then the

23   Debtor, in consultation with Capital One, could engage -- or

24   MCA, on behalf of the Debtor, could engage a national broker to

25   try to expose the property even more widely.  And that process

1  would carry out for about 90 days -- 90 more days.

2          **THE COURT:**  Why not get -- are you sure this is on?

3          Why not get the broker now?

4          **MS. WILSON:**  This may be going into Mr. Aaron's

5  (phonetic) testimony.  But because we believe there are --

6  there are parties who are interested and could make a

7  substantial bid.  They just could not do it at the $30 million

8  reserve.

9          And so if MCA and the Debtor are able to get a

10 qualified bid somewhere less than $30 million, but acceptable

11 to Capital One, we could proceed more quickly with that sale,

12 rather than engaging a broker, incurring that additional level

13 of cost and additional delay if it doesn't seem that exposing

14 it for another 90 days is going to make a material difference

15 in the sale price.

16         The other substantive difference in the amended sale

17 procedures is that Capital One is expressly reserving its

18 rights to credit bid.

19         So that's kind of our -- rather than having a reserve

20 price, that's the safety net that is built into these amended

21 procedures -- is that there -- there is -- and at the end of

22 the 30 days, if -- if Capital One, I think, feels that the

23 offers and the interest that has come in is really not

24 sufficient and not something they're interested in, they could

25 decide at that point to credit bid and --

10

1          And not then?

2          **MR. SPEAKER:**  (Indiscern.).

3          **MS. WILSON:**  We were doing these things fairly

4    quickly over the weekend.

5          So the credit bid protects the floor, rather than

6    having a reserve price.  And those express provisions about the

7    credit bid were not in the -- in the prior order.  So those are

8    kind of the high-level changes.

9          We believe that, based on the prior order and the

10   Court's discretion, those amended sale procedures could be

11   approved today.  That's what we would ask for the Court; to

12   keep this process moving.

13         There are parties who are still talking to MCA, who

14   are still approaching the Debtor about interest in the

15   property.

16         And we prefer that there are or -- an order in place

17   with new deadlines so that we can advise those potential buyers

18   specifically about what they need to do; what is going to

19   happen, what the timeline looks like, rather than having to

20   tell them, "Well, maybe we'll be able to sell it to you, but we

21   won't know for a few more weeks."

22         We'd like to strike while the iron is hot.

23         **THE COURT:**  Okay.

24         **MS. WILSON:**  If you have questions for me, I'm happy

25   to answer them, or I'll yield to whoever wants to talk about

11

1    the status matters next.

2            **THE COURT:**  Mr. Carruth is already standing there

3    behind you.

4            So, Mr. Carruth, would you rather Mr. Harris speak

5    first, since he's on the same side of the issue?

6            **MR. CARRUTH:**  Sure.  Thank you.

7            **THE COURT:**  Then you?  Okay.

8            **MR. HARRIS:**  Thank you, Your Honor.

9            Let me address -- your speaker might not be working.

10   I think mine's working too good.  I hope I'm not blowing the

11   Court's ears out.

12           **THE COURT:**  Oh, no.

13           **MR. HARRIS:**  Let me address, first, the different

14   things that are in front of the Court; maybe at least bring a

15   little bit of -- of order to what we're asking for

16   ballistically.  And then I'll talk a little bit about these

17   procedures.

18           But, as Ms. Wilson went through -- what the Court has

19   in front of it today is a status call on the proceed --

20   extending the sale procedures; a status call on the Stay-Lift

21   Motion; and then a status call on the Debtor's two related

22   Motions for Assumption and Assignment of Leases.

23           Now the Assumption and Assignment of Leases obviously

24   rides with the sale.  Because it's a function of whether or not

25   a buyer can be obtained through the sale process.

1          And then we have a Motion for Expedited Hearing by

2    the ground lessor.  Not -- we're not hearing its Motion to

3    Dismiss, but a motion on whether there's such an emergency that

4    it's got to be heard in some sort of expedited fashion.

5          Going to the sale procedures -- and then I'll -- I'll

6    come back to those different matters, Your Honor.  The sale

7    procedures have been modified.  And the request is to modify

8    and to really address two -- three big issues.

9          One, there's a big bank collapse in the middle of the

10   sale process that had a real bad effect on the ability of

11   buyers -- or potential buyers, in particular, to assemble bid

12   packages under the time constraints of the original order.

13         So those market conditions really affected and had an

14   effect on the activity; the market activity regarding the sale.

15   The extended sale procedures will address that because they

16   extend out the process.

17         The second thing, as Ms. Wilson said, is there was a

18   $30 million bid floor under those existing procedures.  Which

19   at the time we believed was realistic, again, based on at least

20   what we were hearing in the market, but not realistic in the

21   market as it sits now.

22         Bidders have indicated that they would be interested

23   in bidding, but not at the $30 million level.  I don't know

24   what that's going to be ultimately.  Because, obviously,

25   they're not tipping their hat or hand.

1        But the amended pro -- the revised procedures pull

2    that floor off.  So whatever people are willing to bid, they

3    can express.  It has the protections -- the statutory

4    protections of a credit bid, but it will give a full

5    opportunity for this market to bid on this asset at whatever

6    people are willing bid at.

7        Three, it completely protects the interests of the

8    non-Debtor contract parties, which is a fair amount of what's

9    going on right now.  And it eliminates one of the things that

10   they were complaining about in the previous procedures, which

11   it eliminates the time compression.

12       Under these amended procedures, Your Honor, if there

13   is a bidder that is going to be presented to this Court for

14   approval of the same, that bidder and all of its

15   prequalification package and the materials that it has to

16   provide to MCA in order to qualify are turned -- are delivered

17   to the ground lessor, to the tenants, et cetera.

18       And there will not be a hearing on any assignment of

19   the ground lease or anything else any earlier than 30 days

20   after that happens, Your Honor.

21       So they are given a full period of time to look at

22   the data, to look at what is given in the package.  And what is

23   delivered to them is way in excess of what the ground lease

24   provides.  Because that ground lease, in itself, in its own

25   contract terms, gives the Debtor the absolute right to assign

14

 1   that lease without Woodbranch consent to a permitted

 2   transferee, which is an objectively identifiable thing.

 3          And it gives the Debtor the right to assign that

 4   lease to a non-permitted transferee unless Woodbranch has a

 5   reasonable basis to refuse.

 6          So one of the things that's been happening here, Your

 7   Honor, is that the non-contract parties to this lease are --

 8   I'm sorry -- the non-Debtor parties to the lease are trying to

 9   inject themselves into the process of the Debtor, trying to

10   identify potential buyers.

11          That's not their right.  That's not their right,

12   under 365; it's not their contract right; and it's interfering

13   with the Debtor's ability to fully market this property.

14          Their rights come into play if someone is actually

15   presented to this Court as a potential assignee of that lease.

16   And these procedures now fully protect that, and they take all

17   the time compression out.

18          So that's a significant part of the -- of the way

19   this would work.

20          So at the end, Your Honor, the procedures are simply

21   a continuation of the procedures to fully market the property.

22   I can't tell you that there's going to be an acceptable buyer;

23   nobody can.  And that's not a requirement.  And I've never seen

24   a sale procedure where there had to be a guarantee, at the

25   beginning, that somebody could get to the end.

1          Secondly, having a lot of fights over this property

2    is worthless.  This property isn't going to generate anything.

3    It's not helping the Debtor exercise its legal and its

4    contractual right to try to find bidders without interference

5    from other parties.

6          Finally, Your Honor, if you put that in context of

7    these other proceedings, then the procedures can be approved

8    now.  Because they're not affecting anyone's rights at all,

9    other than the parties; the Debtor and Capital One.  Because

10   it's our collateral.  Ground lessor doesn't own that

11   collateral.

12         Number two, Your Honor, the -- if the procedures are

13   put in place today, then we can move forward and there can be a

14   reasonable scheduling and whatever Motions to Dismiss or

15   anything else that Woodbranch wants.

16         If the Court is not inclined to approve the

17   procedures today because Woodbranch has filed an objection,

18   then there certainly could be a hearing in a week or two weeks

19   -- two weeks.

20         And, Your Honor, if that's the course the Court

21   takes, then we'd be fine, as long as Woodbranch cooperates with

22   discovery requests, to have their Motion to Dismiss heard in

23   two weeks.  And you can hear this whole smash and move forward.

24         And, Your Honor, under that type of the schedule, it

25   would allow one consolidated hearing to hear all of this.  It

1    would give the Debtor and Capital One and other parties an

2    ability to test these Motion to Dismiss arguments in a context

3    where they're fully paid, the Debtor's cash flowing, and the

4    property has been improved and maintained by a third-party

5    property manager.

6            But that's their motion; not mine, Your Honor.

7            And if we go in that direction, then the two motions

8    of the Debtor to assume or assign leases, which ride with the

9    sale, can be dealt with at the sale procedure point.  And the

10   other motions will ride with it.

11           So that's simply a suggestion from -- from the

12   podium, on a way to move forward in a reasonable fashion.  And,

13   Your Honor, if we do that, then I suppose we can have a trial

14   today on an emergency hearing request.  But what we're going to

15   be trying is whether their Motion to Dismiss is heard sometime

16   before two weeks from now.

17           I think that's all my comments, Your Honor, unless

18   the Court obviously has questions.

19           **THE COURT:**  No.  Thank you, Mr. Harris.

20           **MR. CARRUTH:**  Your Honor, the way these two documents

21   came down is indicative of the entire problem.

22           **THE COURT:**  I'm sorry.  Which two documents?

23           **MR. CARRUTH:**  I'm sorry.  The way that the -- the

24   sale procedures, the proposed order, and the amended sale

25   procedures, the two documents that were filed yesterday and

17

1   that he's talking about today -- the way those came down in

2   indicative of the entire problem of this case -- is that the

3   entire case now exists for the virtue and benefit only of

4   Capital One.

5            Because I didn't see these until yesterday.  I didn't

6   -- and I still -- I still don't even have -- as far as I know,

7   I don't have a Word document version.  I got PDF redlines, 6:00

8   o'clock, last night, after I had already left the office, to

9   come down here.  So this has been brewing for two weeks.  I get

10  it the night before.

11           And the problem is they didn't follow the orders to

12  begin with.  They may say, "Well, there wasn't a bidder."  They

13  didn't do anything that they were supposed to do under the

14  first sale procedures.

15           That is why we had to interject ourselves.  There was

16  no consultation.  There was no information provided.  They

17  didn't send the list out.  They didn't do anything they were

18  supposed to do to cooperate with us to -- and we went through

19  that at the last -- on February the 23rd.

20           Because we don't take the time -- we don't -- we

21  shouldn't have to chase people, whether it's a 30-day window or

22  a 60-day window.  If there is going to be an assumption hearing

23  in this case at -- about adequate assurance of future

24  performance and whether somebody qualifies under the ground

25  lease -- which I will assert is still intact.

18

1          And, you know, the most recent opinion in this case

2   is Judge Motts.  And the basis of that assumption on assignment

3   opinion, in 2019, was the bid -- the Debtor gets the -- the

4   lessor gets the benefit of the bargain.

5          And this is a ground lease.  This isn't just whether

6   somebody can -- can pay rent or not.  This is whether somebody

7   can -- can manage the property going forward and maintain the

8   property.  It's a ground lease.  It's an entirely different

9   animal.

10         And that's why the provisions of the ground lease are

11  important.  And that's why they need -- we don't need to be

12  chasing people.

13         And this process wipes us out entirely.  We don't get

14  any information until they do a data dump.  And then that's all

15  we get.  We've been completely written out of this.

16         But I don't know because I got it last night.  And so

17  we can't -- this can be entered today.  I mean, it just -- it's

18  just unreasonable.

19         **THE COURT:** I haven't set the motion that was filed

20  yesterday for today.

21         **MR. CARRUTH:** Okay.

22         **THE COURT:** But we're here on a status conference.

23         **MR. CARRUTH:** Yes, Your Honor.

24         **THE COURT:** And I can do certain things in the status

25  conference.

1          But, yeah.  That joint motion has not yet been set.

2          **MR. CARRUTH:**  Okay.  Thank you, Your Honor.  Thank

3   you.  But I mention --

4          **THE COURT:**  Okay.

5          **MR. CARRUTH:**  -- it would be on -- it would be highly

6   prejudicial to consider this --

7          **THE COURT:**  Understood.

8          **MR. CARRUTH:**  -- and enter it today, when we haven't

9   even had a chance to -- to go it line by line and interact with

10  it.

11         But the problem is, and the reason why this case

12  should be dismissed as soon as possible is because it's just

13  for their benefit.

14         They don't follow the orders that were entered.  They

15  didn't give us any information.  They didn't give us any

16  updates.  We had to beg and plead for information.  MCA is not

17  doing its job.

18         Capital One is the only party interacting with MCA,

19  even though all the consultation and provisions were written

20  into that order.  And then they changed the bid.  They changed

21  the bid to suit themselves.

22         That may be the case.  And they said, "Well, it only

23  affects us."  Well, that's right.  "It only affects you."

24  That's why we shouldn't be in bankruptcy anymore.

25         And that's why, if they want to say, "Well, it can be

1   a -- it can be a zero bid, it can be a high bid.  We can always

2   credit bid."  You can always credit bid the foreclosure.

3          You always credit bid when this thing is out of

4   bankruptcy.  And because when it's out of bankruptcy, the

5   property, in general, is in less peril because we're not in

6   default with our lender anymore.

7          And that's the main -- one of the main issues in this

8   case is that the entire property is in peril.  We don't know

9   when that lender is going to act.  Its property is in limbo.

10         The 60, 230-day -- whatever window it is -- because I

11  don't know how long it is, because I haven't had a chance to

12  read it.  Whatever that window is, is a longer period of time

13  before the property is stabilized, before there are people out

14  there trying to lease the property, before there's money being

15  invested back into the property.  And it sits there in this

16  horrible environment.

17         Yes.  There are problems in the banking crisis.

18  There has been a banking crisis.  That's not going to change.

19         Mr. Maher (phonetic) will testify when the time

20  comes.  But that's not going to change.  And this property is

21  not going to be -- nobody's going to be able to finance or put

22  equity in this property.  Very unlikely.

23         The other issue is the -- as far as like what -- he

24  said there's people out here trying to talk -- trying to talk

25  down the bid.  We've done everything we can not to talk down

21

1 the bids. That's why we filed a motion to -- the Motion to

2 Seal.

3        **THE COURT:** The Motion to Seal.

4        **MR. CARRUTH:** And that's why we wanted the Court to

5 look at that under seal to see what they asked for the first

6 time, and what actually came in after four months of marketing.

7        And that's why this is an exercise in futility. And

8 as long -- and like we talked about before, as long as you're

9 trying to sell something in bankruptcy, you've got an extra

10 bankruptcy problem added to it. And people don't necessarily

11 like that.

12        And I think it's indicative that, after this -- you

13 know, the -- so they had -- they had, I think, between 15 and

14 20 people on that initial list that we got on the 23rd. And we

15 didn't get an updated list afterwards. All of a sudden, we had

16 Party A show up with a bid. Party A wasn't on that initial

17 list. So out of 25 people, nobody sent in information.

18        Then a period -- that entire period of time was

19 before Silicon Valley Bank. Silicon Valley Bank didn't hit the

20 media until March the 9th. That was seven days before our bid

21 deadline. Nobody had even submitted information before March

22 the 9th, that we know of.

23        So to say that the banking crisis is going to --

24 effected the bidding in this case, and it's going to magically

25 kind of play itself out is wrong in both counts. It didn't

1    affect the bidding to begin with.

2            And the banking crisis or the credit environment for

3    this kind of property that needs work, that is half vacant, and

4    with vacancies going down, that's not going to get fixed

5    either.  So that's why we think it's important to, just from a

6    substantive economic point of view, dismiss the case.

7            But everything before the Court indicates this is

8    just an exercise for Capital One at this point.  Nobody's going

9    to benefit by it.

10           And whatever -- and instead of all -- all these

11   lawyers being in here today, all these people of Webex, going

12   through extra layers of procedure, asking for cash collateral

13   permission, do this, that, and the other, running up fees,

14   running up costs, exposing this thing to -- to more bad

15   publicity, chasing tenants off as the rats leave the ship, this

16   needs to not be in bankruptcy anymore.

17           Because it's only for their benefit.  And it's

18   hurting the property, and it's keeping us in default with our

19   lender.

20           **THE COURT:**  How are you in default?

21           **MR. CARRUTH:**  Because the underlying property is in

22   bankruptcy.

23           **THE COURT:**  Oh.  Because --

24           **MR. CARRUTH:**  And that is an event to de --

25           **THE COURT:**  -- it's in bankruptcy?  It just --

23

1          I don't know that this is working.  Are you really --

2   you're getting me?

3          **THE COURT REPORTER:**  It is.

4          **THE COURT:**  Okay.

5          **THE COURT REPORTER:**  Uh-huh.

6          **THE COURT:**  Okay.  It's just because it's in

7   bankruptcy provision that the default is triggered?

8          **MR. CARRUTH:**  Yes, Your Honor.

9          **THE COURT:**  Well, it's been in bankruptcy now for,

10  what, nine months?

11         **MR. CARRUTH:**  The lender sent a letter to us advising

12  us of their reservation of rights and that they are -- it has

13  now escalated with the lender.

14         **THE COURT:**  Okay.  But you're getting your -- all

15  your payments under the -- under the lease, right?

16         **MR. CARRUTH:**  Well, we are getting rent payments,

17  yes.

18         **THE COURT:**  Okay.  So I'm trying to understand what

19  your risk is.

20         **MR. CARRUTH:**  The risk is, is that the lender

21  proceeds -- our lender proceeds with its remedies whenever it

22  feels it is not -- it feels that it is unsecure or in jeopardy.

23         And the continuation of the bankruptcy case extends

24  and increases that risk.

25         **THE COURT:**  Even though it's getting paid?

24

1          **MR. CARRUTH:**  Even though the rent's being paid, yes.

2          Because, you know, I've had banks order me before if

3  something's -- if there's a -- "If there's a covenant default,

4  yeah, go foreclose.  We want to move the credit."  We don't

5  know that that could happen with this lender.

6          **THE COURT:**  Okay.  And don't the sales procedures

7  still include a $100,000 amount for the estate?

8          **MR. CARRUTH:**  Yes, Your Honor.  And we're willing to

9  make --

10          **THE COURT:**  So there is some benefit --

11          **MR. CARRUTH:**  Yes, Your Honor.

12          **THE COURT:**  -- to the estate.

13          **MR. CARRUTH:**  And Woodbranch is willing to match that

14  in order to get it out of bankruptcy.  We're willing to put

15  that in the bucket to get it out.

16          **THE COURT:**  Okay.

17          **MR. CARRUTH:**  Absolutely.  We'll do that tomorrow.

18          **THE COURT:**  Okay.  Okay.  Thank you, Mr. Carruth.

19          **MR. CARRUTH:**  Thank you.

20          **MS. SMALL:**  Good morning, Your Honor.  Caroline Small

21  on behalf of San Antonio Preventive & Diagnostic Medicine,

22  which I'll refer to as "the clinic" or "the doctors" or

23  "SAPDM," which is what we have in our -- in our papers.

24          If you're wondering why we're here today, there is --

25  there's a lot of things that aren't of any particular moment to

1    my client.  So we don't really have a dog in the fight over the

2    cash collateral, the sales procedures.

3            Frankly, we're not interested in -- in getting

4    involved in the bankruptcy any more than we have to.  And,

5    frankly, couldn't care whether it gets sold, not sold,

6    assigned; what have you.

7            Our concern -- I guess I'm one of the rats leaving

8    the ship.  The pre-petition -- we informed the Debtor that we

9    would be moving out due to the deteriorating condition of the

10   building.  And our concern is simply that we want to follow

11   through with that as soon as possible.

12           And so our interest really is only in the motion for

13   -- the original Motion for the Assumption of the Lease.  We

14   were objecting to that.  We have objected to that for all the

15   reasons listed in our pleadings.

16           And then we were opposed to just moving out that

17   hearing.  But we ultimately agreed to the status conference

18   today.

19           Because, from my client's perspective, while I enjoy

20   sitting here in your courtroom, Your Honor, and listening to

21   the -- the good arguments of Counsel, my client doesn't really

22   enjoy paying me to do that and would like at least our issue

23   with respect to assumption of our lease teed up as soon as

24   possible.

25           And it seems, by tying it to these other motions in

26

1    terms of the sales procedures and whether it eventually gets

2    assigned, it's just -- it's inefficient for my client.

3         And so we're trying to just ensure that we can tee up

4    the assumption -- not necessarily as to every tenant, but as to

5    our tenant, as soon as possible so we can follow through with

6    what we started, pre-petition, and seek to terminate, under

7    State law for the same reason we joined in the relief to

8    dismiss the case.

9         Because then that obviously gives us rights to

10   proceed under State law.

11        **THE COURT:**  Yeah.  But the --

12        **MS. SMALL:**  So that's why we're here today.

13        **THE COURT:**  I'm sorry.  So the -- until the Debtor

14   has a buyer, there's nothing to be assumed, right?

15        In other words, right now the Debtor doesn't have a

16   buyer.  If I allow them more time to find a buyer, that's the

17   first time that they'll have a reason to assume, right?

18        If the Debtor doesn't have a buyer, it would have to

19   be either a credit bid from Capital One, in which case you'd be

20   talking to Capital One about assuming.

21        **MS. SMALL:**  Well, it seems to me that, unless they

22   have a buyer, they don't have someone to assign it to.  But

23   they still have to decide whether they're going to assume it.

24        **THE COURT:**  I'm sorry.  That's correct.  That's

25   correct.  I'm conflating the two, right?  They don't have

27

1    anyone to assign it to.

2         But they're not going to assume it if they -- they

3    won't necessarily assume it unless they have a buyer in place.

4    In other words, a Debtor never assumes a contract unless

5    they're reorganizing or have someone on the hook to -- to

6    purchase the assets.

7         **MS. SMALL:**  That may be their position.  Our position

8    is let's tee this up and get it -- and get it moving forward as

9    soon as possible.

10        **THE COURT:**  Okay.

11        **MS. SMALL:**  In other words, from our tenant's

12   perspective -- or my client's perspective, it doesn't matter to

13   us whether the lease gets assigned down the line or not.  We

14   have grounds today to terminate the lease that we want to

15   pursue.

16        And short of lifting the stay -- which I understand

17   the position is, that's not the way it's done; it's done

18   through this way.  We're happy to do that.  But we're just

19   interested in making sure that happens sort of sooner than

20   later.

21        And so to the extent that they need more time for

22   this sale and find more bidders, frankly, we could care less.

23   But the impact on us, in kind of kicking that can down the

24   road, does hurt my client because we're in a building where it

25   is, frankly, not safe to practice medicine.  And they need to

28

1    get out.

2            And so that's our concern we're trying to balance,

3    Your Honor.

4            **THE COURT:**  Okay.  All right.  Thank you.

5            Anyone else?

6            **MR. SPEAKER:**  Your Honor, just one --

7            **MS. SMALL:**  Just a second.  Mr. Taube --

8            **THE COURT:**  Oh.

9            **MS. SMALL:**  -- is on the Webex.

10           **THE COURT:**  Okay.

11           **MR. SPEAKER:**  Oh, sorry.

12           **MR. TAUBE:**  Good morning, Your Honor.

13           **THE COURT:**  Good morning.

14           **MR. TAUBE:**  This is Greg Taube on behalf of Office

15   Ally --

16           **THE COURT:**  Yes, sir.

17           **MR. TAUBE:**  -- tenant in the building.

18           I would echo Ms. Small's remarks regarding -- her

19   argument regarding her client's position as a tenant.

20           In addition, Your Honor, I would add that Ms. Small's

21   client and my client are being held hostage by the automatic

22   stay in this bankruptcy case.

23           And I filed a Motion for Relief from Stay for my

24   client and also joined in the Motion to Dismiss on the same

25   grounds as -- for the Motion for Relief from Stay in that my

29

1    client is prevented by the automatic stay from terminating the

2    lease.

3            And without any grounds for continuing the bankruptcy

4    case, the stay should be terminated as to my client, which is

5    all that I'm asking for, for my client.

6            But if it takes dismissing the case for my client to

7    be able to terminate the lease, then I'm for dismissing the

8    case for my client.

9            That's all, Your Honor.

10           **THE COURT:**  Okay.  Thank you.

11           Anyone else on the phone?

12           Okay.  Follow up?

13           **MR. HARRIS:**  Your Honor, let me make these

14   observations.  As you've seen from the argument, from all of

15   the Counsel, there -- there are a lot of issues here.

16           And I won't bore the Court with more -- with more

17   argument at a status conference other than I do want it to be

18   very clear that MCA, Capital One, and the Debtor complied with

19   every single piece of the sale procedures.  And any suggesting

20   that they didn't is just wrong.

21           But that's not today's fight.  And as I said, at the

22   beginning, Your Honor, we're -- it's a status call on the sale

23   procedures.  We're -- if the Court wants to have a hearing, and

24   Mr. Carruth's client can raise whatever objections they think

25   they have after he reads them, we can have that hearing in two

1    weeks.

2         Mr. Carruth's client wants a hearing on a Motion to

3    Dismiss the whole case.  We can have that hearing in two weeks.

4    And the Debtor, Capital One, and other parties have some

5    ability to conduct some discovery over this alleged default and

6    these other issues.

7         Because the reality is, Your Honor, nobody in the

8    courtroom can dispute this Debtor has paid that ground lease

9    current.  All the taxes are current.  It is performing its

10   obligations.  The Debtor has improved, dramatically, the

11   property.

12        And so what you have are three non-Debtor parties to

13   contracts trying to tell the Court what to do with an entire

14   bankruptcy case, whose interests are being protected.

15        But, Your Honor, if they think they're not, then that

16   can be the subject of that hearing when everybody has a fair

17   opportunity to present a full case.

18        So if we move things to two weeks, you don't have to

19   have a hearing today, on the fly, over whether there's an

20   emergency need because they'll have their -- over the Motion to

21   Dismiss, because they'll have their hearing in two weeks and

22   we'll have an opportunity to take some examination of

23   Woodbranch on some of the allegations that they've made.

24        The Court will have -- all parties will have time to

25   look at those procedures.  And if they think there's something

31

1    inappropriate with them that effects their legitimate rights,

2    they can bring it to the Court.

3           And the Court can then decide whether it's moving

4    forward with the sale process and under what conditions or

5    whether the Court decides that they've presented such a

6    compelling case that something else needs to be done.  But

7    that's the orderly way to do it.

8           And at that same hearing, Your Honor -- neither one

9    of these two tenants that just spoke to the Court have filed a

10   Motion to Compel rejection.  That's their remedy if they think

11   they are being harmed.

12          The Debtor is maintaining the property.  The Debtor

13   is in compliance, it believes, with the leases, post-petition.

14   The Debtor has a statutory right to cure defaults.

15          So if they think there's something -- and as the

16   Court observed, the Debtor certainly has the right to try to

17   effect a sale of its assets to a buyer that would lead to an

18   assignment, if they can meet 365 in the contract terms.

19          So if those parties think that there is something so

20   dramatic that's occurring that it compels immediate relief that

21   they haven't even asked for yet, then hear that in two weeks.

22          And we can get through this back and forth, and

23   either move forward with the sale process that everybody

24   understands and that protects everyone's rights, which we

25   believe this one does, or these parties will mount some sort of

32

1   case that we'll all be real interested to see, that this whole

2   case has to terminate today because of the interest of three

3   non-Debtor contract parties whose post-petition obligations are

4   fully current.

5           That would be our suggestion, Your Honor.  It's the

6   efficient way to go.  It gets rid of a lot of piecemeal

7   hearings over issues that -- that, frankly, aren't important;

8   in particular, the extradited hearing.  Because we can have

9   that hearing in two weeks.

10          **THE COURT:**  Okay.  Mr. Carruth?

11          **MR. CARRUTH:**  Your Honor, I guess, to dovetail onto

12  that -- it was something we didn't get to first time I was up

13  here.  That's putting the Party A bid in front of you and

14  getting ruling on the Motion to Seal.

15          And I have a copy of that bid in which I think will -

16  - I think will help the Court with -- with some of -- maybe

17  some of the decision making or some of the perception of this

18  case today.

19          **THE COURT:**  Well, let me ask you, first, about the

20  expedited, right?  The Motion for Expedited Hearing on the

21  Motion to Dismiss.

22          And Mr. Harris now has offered twice the two-week

23  prescription for when the hearing could be held.  Can I get

24  your kind of advice?

25          Where does your client stand on how quickly you want

1 | to try and have that?

2 | **MR. CARRUTH:**  May I do one quick --

3 | **THE COURT:**  Yeah.

4 | **MR. CARRUTH:**  -- final consultation?

5 | **THE COURT:**  Yeah.  Sure.

6 | **MR. CARRUTH:**  Thank you.

7 | **THE COURT:**  Sure.

8 | **(Attorney Carruth consults with Client)**

9 | **MR. CARRUTH:**  Your Honor, I think the two-week would

10 | be acceptable.  And I think, in the meantime, we will also tee

11 | up a Motion to Compel Rejection of the Ground Lease to be heard

12 | with all of that.

13 | And I can get that on file -- today's Tuesday -- by

14 | Thursday.  But it'll be same -- same stuff, some same issues.

15 | I'm sure it all overlaps.  So, you know, the two-week item

16 | would be acceptable.

17 | And just as a housekeeping matter, my April 5 matters

18 | in Cooper Lax (phonetic) were going to get pushed anyway next

19 | week.  So that opens up time for all of us.  Because we settled

20 | with the bank.  And we're going to re -- re-notice.

21 | But, yes.  I think that -- under the circumstances,

22 | that would be workable.  And if the Court's not inclined to

23 | dismiss today, then that would be the -- the obvious

24 | alternative would be a hearing in a couple of weeks.

25 | **THE COURT:**  Okay.  Yeah.  My problem is, as you saw,

34

1  both the objectors have suggested they need some discovery

2  before we have the Motion to Dismiss.  And so I'm really

3  hesitant to set it on a day or two notice for that reason.

4       But that doesn't mean we can't certainly consider it

5  on an expedited basis.  And so if you're in agreement at two

6  weeks, I think it makes some sense to go ahead and try and set

7  it two weeks from now.

8       **MR. CARRUTH:**  And we would, likewise, need a little

9  bit of discovery also.

10      **THE COURT:**  Okay.  Let me see.  I'm going to be in

11 Waco in two weeks.  What about either the 26th or the 25th?  The

12 26th would probably be my preferred date.

13      **MS. WILSON:**  Your Honor, either the 25th or 26th works

14 for the Debtor.

15      **THE COURT:**  Okay.

16      **MR. SPEAKER:**  I have a JP Court non-jury trial on the

17 26th.  And the associate who just was covering that just left.

18 But I'll find another associate to cover that.

19      **THE COURT:**  Are you sure?

20      **MR. SPEAKER:**  Yes, Your Honor.  Yeah.  We can --

21 yeah.  I'll make the 26th work, Your Honor.

22      **THE COURT:**  Make the 26th work?

23      Mr. Harris?

24      **MR. HARRIS:**  Twenty-sixth will work, Your Honor.

25      **THE COURT:**  Okay.  Ms. Small?

35

1          **MS. SMALL:**  Twenty-sixth works, Your Honor.

2          Would that also be the date that any Motions to

3     Compel Rejection would be heard?

4          **THE COURT:**  So you got to file a motion to expedite

5     with it.  But, yeah.  I can probably -- if you get them on file

6     soon enough, we'll go ahead and we'll -- we'll set those

7     probably the same time.  Okay?

8          **MR. HARRIS:**  Can I just make one comment --

9          **THE COURT:**  Yeah.

10         **MR. HARRIS:**  -- (indiscern.), Your Honor?

11         **THE COURT:**  Yeah.

12         **MR. HARRIS:**  We haven't seen any Motion to Compel

13    Rejection.  And I think we would have a real objection to that

14    until we see it, on that being set on an expedited basis.

15         But it hasn't been filed yet.  So --

16         **THE COURT:**  It hasn't been filed.  I'll look for the

17    Motion to Expedite; I'll look for your objections.  And we'll

18    sort it out from there.

19         **MR. HARRIS:**  We'll reserve our rights, Your Honor,

20    when we see whatever --

21         **THE COURT:**  Okay.

22         **MR. HARRIS:**  -- the request is.

23         **THE COURT:**  Okay.  And, Mr. Taube?

24         **MR. TAUBE:**  Yes, Your Honor.  That schedule makes

25    sense from Office Ally's perspective.

1          **THE COURT:** Okay.

2          **MR. TAUBE:** This hearing on 25th or 26th.

3          **THE COURT:** Okay. Well, it'll be on the 26th. So

4    we'll set the Motion to Dismiss that's on file for April 26th,

5    at 9:30 a.m.

6          We'll also go ahead and carry over the joint motion

7    on the sales procedures that was filed yesterday to that time

8    period. Okay? And that will then carry the Motions to Assume

9    -- let me make sure I get those docket numbers. I'm sorry. We

10   got a lot of stuff going on here.

11         So your Omnibus Motion to Assume, Ms. Wilson. And

12   then your Motion to Assume to Ground Lease. We'll carry those

13   over to that date as well.

14         **MS. WILSON:** Very good, Your Honor.

15         **THE COURT:** Okay? So that resolves the Motion for

16   Expedited Hearing.

17         And, Mr. Carruth, my suggestion would be, we carry

18   over your Motion to Admit that on a confidential basis to that

19   date as well.

20         And I would suggest that the Court prefers to take

21   things in-camera as opposed to sealing them. And so it's your

22   motion. You get to direct how you want it. But I'll tell you

23   that, if I'm going to find something is truly confidential

24   information, my preference is generally just to take it for

25   review in-camera.

37

1          **MR. CARRUTH:**  Can we give you this in-camera now,

2    then, while we're here?

3          **THE COURT:**  No.  Let's wait until we -- I need to

4    make sure it's confidential information first before I kind of

5    agree to that.

6          **MR. CARRUTH:**  Well, if -- I'm not asking for an

7    advisory opinion.  But as long as we're all talking, if the --

8    when it comes time for all of these bids to be discussed,

9    whether --

10         **THE COURT:**  Yeah.

11         **MR. CARRUTH:**  We're going to have to have some --

12   some process or procedure for them to see daylight, whether

13   it's the qualification stage or whatever -- whatever's in these

14   new procedures.

15         So we're going to have to have something where we can

16   talk about these openly.  Because, you know, this -- their

17   words in their motion was a very low bid.  And I can't

18   emphasize enough how -- how that was correct without, you know,

19   breaching the existing confidentiality I have.

20         **THE COURT:**  I get that.  I do.  I do.  But we're not

21   going to have any new bids, I don't think, before the 26th.

22   And I guess if we do have new bids before the 26th, then I

23   would want them to be shared appropriately, subject to

24   confidentiality.

25         So you should be able to see them.  But my

38

1    understanding of your Motion to Seal, it was related to your

2    Motion to Dismiss.  You wanted to show me how low the value

3    was.  And then we'll talk about the -- I think your term was

4    the "uselessness" or the --

5              **MR. CARRUTH:**  Futility?

6              **THE COURT:**  I'm sorry?

7              **MR. CARRUTH:**  Futility?

8              **THE COURT:**  -- futility.  That's the word I was

9    looking for -- the futility of proceeding forward.

10             And so I want to reserve that for that hearing.  And

11   we'll take that up first before that -- you know, before we

12   actually have witnesses on that.  Okay?

13             **MR. CARRUTH:**  Thank you.

14             **THE COURT:**  Now, I realize we're a little bit before

15   the 10:00 o'clock.  And some of these things weren't set for

16   10:00 o'clock.  But I think I have all the parties in here that

17   are interested.

18             Go ahead, Mr. Harris.

19             **MR. HARRIS:**  Just two comments, Your Honor, before we

20   wrap.

21             Number one -- and I know Mr. Carruth will do this.

22   But with two weeks, there is discovery that we will need to

23   take.  And so we would try to do that informally.  And our

24   expectation would be there would be cooperation with reasonable

25   informal discovery.

39

1          And the second is, we do have the cash collateral --

2          **THE COURT:**  Oh, yeah.

3          **MR. HARRIS:**  -- matter that we just need an order in

4     place so operations can continue.

5          **THE COURT:**  Yeah.  I didn't hear any objections from

6     any of the parties on continuing cash collateral.  I mean, it

7     doesn't matter if I continue cash collateral, and I dismiss the

8     case in two or three weeks, right?  It becomes moot in terms of

9     where we'll go.

10         Do you have a problem with --

11         **MR. HARRIS:**  I just didn't want anything at this

12    point to prejudice our dismissal arguments.  But --

13         **THE COURT:**  Yeah.  No.  I don't view it as

14    prejudicing your dismissal arguments at all.  It's just a

15    matter of we want the Debtor to be able to continue to pay your

16    client and pay everybody else.

17         **MR. HARRIS:**  Yes.  So no objection to the -- the

18    order circulated -- if you want to do this.  Let me -- it came

19    in yesterday.  If I can have 30 minutes after the Court to

20    browse through the order.  But we're not going to object to the

21    continued use of cash collateral.

22         **THE COURT:**  Okay.  Okay.  Thank you, Mr. Carruth.

23         **MR. HARRIS:**  And, Your Honor, this is just following

24    up on that.  So the Debtor's authorization to use cash

25    collateral terminates today.  That was said in the existing

1   second extended order.

2           And so we have proposed an order in -- the same time,

3   we weren't -- we're now up to the third extended order.  We're

4   using the same form.  We proposed a budget.  It's 120-day

5   budget.  It goes out.  Obviously, as you said, if you dismiss

6   the case in the meantime, well, it won't.

7           But it does allow us to go forward.  And it provides

8   that -- you know, the cash flow from the property is -- it is

9   sufficient to pay the ground lease, going forward; to pay all

10  the operating expenses, which was a big problem earlier in the

11  case before, you know, the third-party property manager got

12  involved.

13          There is a provision, Judge -- and it's the same

14  provision that's been in all of these orders -- that allows MCA

15  to continue like the marketing process their doing, which is

16  maintaining a data room and fielding questions from interested

17  parties and the like.

18          We won't be submitting bids during this period.  But

19  that -- you know, we aren't going to shut down the existing

20  sale process.  And people want access to a data room or -- or

21  the like or want to tour the property; that type of thing, you

22  know, this order would open -- would provide the data process

23  would continue.

24          Which doesn't affect anything that's going to be

25  heard by the Court in two weeks, other than, you know, we don't

41

1  turn people away because there is not some continuing

2  authorization.

3       **THE COURT:**  But you think you already have some

4  potential bidders lined up, just at a lower valuation than

5  Capital One would like?

6       **MR. HARRIS:**  That was the (indiscern.) that people

7  were saying, "Well, we can't bid at that value."  And when you

8  say, "There was one really low bid," they submitted an non-

9  conforming bid, because there was a $30 million floor; other

10  bidders did not.

11       And so that's -- the point of this would be to expose

12  it to that.  And there are interested party -- Judge, one other

13  just technical thing that you mentioned, which was, you know,

14  we have this kind of 30-day period to see if the -- if existing

15  parties would submit an acceptable bid.

16       You mentioned, "Well, why don't we get a broker

17  involved sooner than later?"

18       I think there would be the -- the expect -- or the

19  proposal is that a broker would be retained.  That would be

20  subject to Court approval.  I think we could get that approval

21  process going so that, you know, come that 30-day period, it --

22  they need to be ready to go.

23       And so it would somewhat parallel.  But it -- but

24  we'll have to address the broker retention during that period

25  as well.

42

1          **THE COURT:**  Frankly, by the 26th, you might want to

2    have the broker in place.

3          **MR. HARRIS:**  And we can certainly work on that or at

4    least have a proposal.

5          **THE COURT:**  Okay.

6          **MR. HARRIS:**  So, Judge, we had submitted the order

7    through chambers.  We provided a notice to everyone who has

8    been active in the case.

9          U.S. Trustee is approved.  The Debtor, obviously, is

10   in agreement with it.  Mr. Carruth approved his position.  I

11   did, for your purposes, did submit a redline that shows the --

12   you know, the very --

13         **THE COURT:**  I've reviewed it.

14         **MR. HARRIS:**  -- few changes.

15         **THE COURT:**  I've reviewed it.  The order looks okay

16   to me.  But I want to make sure Mr. Carruth is on board as

17   well.

18         So give him some time to review it before you either

19   resubmit or just let the Court know that the order, as stands

20   is --

21         **MR. HARRIS:**  Assuming we would upload it as an order

22   and go forward from there.

23         **THE COURT:**  Yes, please.

24         **MR. HARRIS:**  All right.  Thank you, Your Honor.

25         **THE COURT:**  All right.  Let's talk real quick about

43

1    discovery, since you raised it.

2              I expect reciprocal rights, obviously, with respect

3    to the discovery.  And I expect cooperation.  I don't expect

4    long deposition days or things like that, right?

5              And so if there is any pushback or things like that,

6    feel free to contact us, and we'll -- we'll either jump on the

7    phone or jump on a Webex hearing or something to -- to try and

8    deal with that.

9              But, yeah.  I expect both parties to cooperate in

10   that process.

11             **MR. HARRIS:**  Understood, Your Honor.

12             **THE COURT:**  Okay?

13             All right.  What have I missed?

14             Ms. Castleberry, what have I missed?

15             **THE CLERK:**  The only thing I can recall, Judge, is

16   the multifarious pleadings.

17             **THE COURT:**  Oh, yeah.  So, Mr. Carruth, generally the

18   -- we don't allow, quote, multifarious pleadings.

19             Your Motion to Dismiss is primarily a Motion to

20   Dismiss.  And then the alternative is the -- a motion as to MCA

21   -- right? -- for the removal of -- or the vacation of the order

22   as to MCA.

23             Generally, those have to be done as separate motions

24   because that's the way the Clerk's Office keeps track of it.

25   Right?  They have trouble keeping track of both things.

44

1  Because I might do one thing with respect to one motion, and

2  something different with respect to the others.

3          And so for now we'll go ahead and we'll carry it to

4  the -- the 26th.  But please don't let that happen again.

5          **MR. CARRUTH:**  Understood, Your Honor.  Fewer Roman

6  numerals in the -- in the titles.

7          **THE COURT:**  Yeah.

8          **MR. CARRUTH:**  Understood.

9          **THE COURT:**  Okay.  Okay.  And then I think the -- did

10  we talk about Office Ally's Motion to Lift Stay?  Is that going

11  to also be reset to the 26th then?

12          **MS. WILSON:**  I think so, Your Honor.  We've carried

13  that with the Omnibus --

14          **THE COURT:**  Okay.

15          **MS. WILSON:**  -- Motion to Assume because they're

16  related.

17          **THE COURT:**  Okay.  All right.  I just wanted to make

18  sure that was on the record.  Because I don't think I said it

19  specifically.

20          Okay.  Now I think that's it.  I think that's it.

21  All right?  I know I've got -- and we're at 10:00 o'clock.  So

22  I've got some other matters set, and there's a lot of you in

23  here.

24          So we'll take a few minutes for you guys to gather.

25  But I have some other folks coming up.  So I'm not getting up.

45

1    I'm going to wait -- we're going to call the next matter.

2    Thank you all for being here this morning.

3          **(Proceeding adjourned)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          <u>April 7, 2023</u>

           Signed                                    Dated

*TONI HUDSON, TRANSCRIBER*